May it please the court, justices, counsel, and the state. I'd ask the court's indulgence for one second to read a passage, a brief one, that was written a hundred years ago, which I believe encapsulates our position on what we believe to be the essential issue before this court. As long as it jives with Glasspar. Whether it's a hundred years ago or a thousand years ago, it's going to have to jive with what the Supreme Court said in Glasspar. Yes, Judge. It is the policy of our laws to afford each and every person who may have cause for trial in our courts a fair and impartial trial. This can only be done by having the mind of each juror who sits to pass judgment upon the life, liberty, or rights of a suitor entirely free from bias or prejudice. In order to determine whether the person who may be called as a juror possesses the necessary qualifications, whether he's prejudged the case, whether his mind is free from prejudice or bias, the suitor has the right to ask him questions, the answer to which may tend to show he may be challenged for cause or disclose a state of facts from which the suitor may see proper to reject the juror's gravitory. That was written a hundred years ago. I do not believe that Mr. Griffin was allowed that chance in this case. What was the constitutionality of the pre-amended Rule 431, or what was the equivalent of 431 before it even allowed the right to request these admonitions? Then they were just part of the instructions, weren't they? And was there a constitutional challenge that passed muster? I mean, you're trying to raise a constitutional issue here, aren't you? And I'm just wondering whether you have sufficient ground here to make that point. Especially in light of the Thompson case. That's my question. How do we write around Thompson if we're sympathetic to him? First, this is a pre-amendment case, as we know. This trial occurred in 2006. And I think what distinguishes Griffin is the utter lack of conversation between the trier effect and the jurors. But that's how it was under 431 without a request. All you had was a unilateral communication by way of an instruction, cautionary instruction or what have you, without looking for any reaction other than the presumed prop. probability that those admonitions were heard and picked up by the jury. To reject those who came to court, who came to that trial, who wanted to sit as triers of fact, to reject those who would reject those presumptions that a man is innocent until proven guilty, that he need not testify, that he need not present evidence, that he's caught with that presumption through deliberations. But these were given by the judge on at least four occasions. There was a general admonition. There was not a question and answer. It was not even, does anybody have any problem with these? But that wasn't required at that time. Our position judged that once the defense asked, those questions... But your defense didn't ask, though. The defense put them in a written form prior to the trial asking... And then waived it by withdrawing them. He waived the capital issue questions that he put in that form. Well, he waived the whole packet because he took it back. Judge, I think the record shows that the attorney specifically said, as we have waived jury for sentencing, we are waiving the issues that deal with the capital. We are waiving the questions that deal with the capital issues. The zero presumptions are for every trial, not just capital cases, but for every trial. And those zero presumptions were in that form that he asked the court to... So you've got to show me where there's plain error. One, the lack of conversation between the prior effect and the jury at any time during the voir dire and the selection of that jury. You're correct in, obviously, the court mentioned the admonitions at the beginning. And then after the first panel was seated, mentioned them again in seven lines. Again, not a question and answer. And now, do you accept these? Anybody got a problem with them? Do you have a case of magnitude here, or do you need... I'm sorry? Do you have a case of constitutional magnitude, or do you have to establish prejudice and the closeness of the evidence? The right to an unbiased prior effect is an essential right. How do you make a constitutional magnitude issue here when the Supreme Court has already spoken to that and said that it's subject to irreversible error? In Glasper, the Supreme Court tells us that they are not saying this will never be reversible error. Now, the court asked me about prejudice, and when there's no conversation... But when won't it be reversible error, according to your scenario? Where's the bright line for that? We don't have a bright line. They've rejected... Well, what bright line are you suggesting? There has to be some conversation. There has to be some acknowledgement by the person... Well, if I were going to draw a bright line, if I were going to, I would be more inclined to draw the bright line on whether there's an admonition rather than the conversation. But if the defendant never hears from the person being sat as a juror whether he accepts these presumptions or whether he rejects these presumptions, I direct the court's attention to page 190 of the supplemental record, where the one time a juror talks to the defense lawyer about whether you're going to present any evidence to me. And the defense lawyer steps back and says, wait a minute now. Are you saying that you're not going to listen unless I present evidence to you? The court had a perfect opportunity to step in and say, wait a minute, the defense doesn't have to present anything. The defense can sit there through the whole trial and not offer an iota of evidence. That was not done. In fact, the defense lawyer, when he wasn't getting anywhere with the juror, who in fact at one point the juror says, don't checkmate me, step back and let the subject drop. That's the prejudice that is exhibited. We don't know if any other juror felt that same way. Are you prepared to make a case in the alternative that the evidence here is close and that there is prejudice? We don't believe the evidence in this case is overwhelming. We don't believe. Notwithstanding the confession. An oral statement, not in writing, taken after two days in custody, where the defendant said that he was just playing games with the police officers. There was no waiver, initial denials, trips to the hospital. The defendant says he was at the time in and around the oral statement. There's a scuffle with the police where he's stashed and hit around the neck and chest. The lawyer shows up, sees the fresh parts on the neck and chest, and immediately goes out and talks to the state's attorney. He says, I want to take pictures of this. I can't believe the way you're treating this guy. That's the oral statement in this case. But even his own grandma can't say that she saw anything, nor the paramedic. But she sees him prior to the afternoon interview with these detectives, prior to the arrival of the lawyer. Our position is that the injuries that concern us and that belie the Wilson standard for the state occurred after the trip to the hospital and before the 4th or 345 arrival of Attorney Bensel. Does the argument of a coerced confession survive the motion to suppress? Well, does it survive? I think the circumstances of any admission in a trial court from a defendant, the circumstances can certainly be looked at. But the problem with the motion to suppress is that one witness could have helped Mr. Griffin in that case. This was not called Bledsoe, except that the perennial rule is that choice of witnesses is attacked. Not when the one witness you have that you know is there would come in and support your position. There's no unanimity to that, is there? That's in dispute as to what Bledsoe would say. What she would have said, Judge? I think she would have reiterated what she said at trial. Well, you think that, but then, you know, switch over as the good lawyer that you are. If you were wearing the other hat there, you'd think the other way. If I was wearing the hat that represented Mr. Griffin at trial, Judge, in that motion, I would have called Attorney Bledsoe to sustain my position that any oral admission from my client was a result. You don't know that, though. And going to the – they already had the pictures and evidence. The photographs that she looked at, I said, yeah, that's what I saw. So what else do we need from her? It's a live witness. It's an attorney. It's an unbiased party. The only person that Lester Griffin talked to for two days was State's Attorney's and police officer. And those are the only people who testified at the trial, at the motion. Bledsoe comes in and says, I see him at 345, and I'm concerned about the way this guy looks. And I go out and tell Mr. Allignment, you've got to take pictures of this. Well, why don't you move on to something else? I'd like to go back to Glasper. I'd like to go back and reiterate the fact that Glasper tells us that we are not saying this is never reversible error. And in this case, we have ammunitions, and as Judge Gordon says, maybe that's good enough, maybe that's the bright line. But how does that help the person selecting the jury to know if the person being given the ammunition doesn't tell us whether he agrees with it or not, or is against it? We've all sat in jury selection in trial programs in this state, and we've heard jurors say, you know something? I've got a problem with the guy who's not going to get up and say, I didn't do it. Because the defendant doesn't want that juror to sit, because obviously the juror's not going to go along with the essential presumptions found so valuable in people versus zero. I understand that the recent case law, particularly from our Supreme Court, would indicate, well, I'm not going to go so far as to say that ammunitions are enough, but I think they get away, and I don't think they acknowledge the fact that the real issue is the guy sitting at the defense table, listening to prospective jurors, the people who are going to sit at his liberty, he doesn't get to hear him talk or answer or respond or acknowledge whether they really believe he's presumed innocent. Whether they really believe, he doesn't have to present any evidence. Whether they really believe, he doesn't have to testify. And I think, again, I repeat myself, the page 190 supplement with the back and forth with the juror, after one panel's argument's set, indicates what the problem really is. We don't know from any other juror that was questioned in that voideer whether they felt the same way as I think her name was Williams or Walker felt, that you better bring evidence to me. I'll go with the evidence. And the judge wouldn't step in and say, wait a minute, wait a minute, that's not what you have to do here. You have to accept the fact that defendants need not prove anything. And I think that's what distinguishes this pre-amendment case from the cases that follow. Now, obviously, we acknowledge the fact that there's been decisions on each side, but this is a case where Mr. Griffin did not have the opportunity, did not hear the people who sat on his trial agree or disagree with the presumptions, the four essential presumptions that we've been dealing with in this state and this country. But he did have the opportunity if his counsel would have used it. And so it really transmutes into a question of whether the failure of his counsel to ask for a response is sufficient to establish a case of ineffective assistance. But it moves it off the grid of constitutionality because the opportunity was there. It wasn't as if the attorney asked and was denied the right to do it. That's correct, Judge. So we're not dealing with the constitutionality of the admonition itself because there was no preclusion, but we're now moving into effective assistance of counsel territory, aren't we? But in order to determine whether a juror is biased, we need to hear from the juror, not just the court, telling us what the four essential presumptions are. We need to hear the juror say, I've got a problem with that. Or I don't have any problem with that. I can sit. And the court, by its last statement, would want to switch the burden to the defense lawyers to determine whether these jurors understand the four principles, acknowledge them, accept them. Are there any pre-amendment cases that hold the defense counsel to be ineffective for not exercising his right to request the charges? In other words, before it became a sui sponte duty on the part of the court, it was in the defense counsel's hands as to whether to ask. I'm just curious if there are any cases that have held him to be ineffective if he didn't exercise that right. Judge, the only situations that come to mind pre-zero are when some dialogue has gone back and forth between a juror and either the judge who was ever asking the questions, and they exhibit some kind of bias and then the lawyer doesn't bounce it. I am not familiar with any case that says because the lawyer didn't ask for the four presumptions, he's ineffective. Why? That was the status in which this case was left when the court abdicated its sui sponte duty to get a response. It was left in the same posture as the pre-amendment situation would have been, and if there is no ineffective assistance of counsel scenario here, and we can't say it's unconstitutional because counsel could have asked for it, then we're back into the question of whether it's an error of constitutional magnitude or whether you have to look for prejudice. Judge, if we want to go back before this case and get in that posture, and for sure to zero, this is reversible. Just as Justice Perks says in two dissents now. Prejudicial error is reversible error. And if the Supreme Court wants to overturn zero, why don't they? No, but zero was not violated here. What was violated was the post-zero amendment. Well, here's where I respectfully disagree because I think zero is violated here because the person who is trying to select a fair jury doesn't get to hear from the jurors about how they feel about the four presumptions. Okay, I think we've got to move off this issue. Unless you don't have anything else. Other than judgment, what frustrates me in this argument is that we're not talking about quantity of evidence here. We're not talking about whether the court willingly describes these four presumptions. We're talking about a man's right to know that the person sitting in that jury box doesn't hold a bias that, you know something, if you don't tell me you didn't do it, you're guilty. You've told us that. Okay. The only other issue, the one I think we ought to touch on a little bit, is the failure to call Attorney Bledsoe at the motion to suppress. We've stated in our brief that she was an essential witness. She is the one witness who was not a police officer or a state's attorney other than the grandmother who saw him early on the second day of custody and would have come in and been able to belie the state's Wilson position that they had explained or that there was no injury caused to Mr. Griffin in and around his oral statement. Attorney Bledsoe, based on her trial testimony, would have belied that fact. With that, I'll hold a few minutes for rebuttal. All right. Thanks. May I please report, Joan Frazier, on behalf of the people? With regard to the Zier issue, the first point I want to make is that the issue was forfeited because the defense counsel never asked the Zier questions. Well, actually he withdrew his request that Zier actions be posed in the trial court. Well, he qualified that. He said he did not withdraw the Zier questions. He withdrew the felony murder questions. No. Excuse me. He did not say that. He never said, I do not withdraw the Zier questions. What he said was he had a lengthy list of questions that he wanted the jurors to ask. Then he decided that he would have a capital jury sentencing and that he would have the judge be the sentencer during sentencing. So he said, I'll have a jury for the guilt-innocence phase. And here's exactly what he said. I think the list of questions I had submitted were kind of focused on capital issues. Those will all be withdrawn. And the new list that we submit will focus on guilt and innocence and not punishment. So what he said is those will all be withdrawn. He never qualified. This is pre-amendment? This is pre-amendment. So these remarks show that the defense counsel withdrew his entire questionnaire, and he never did submit a new one. So, you know, bottom line, the issue has been forfeited. It was the defense attorney's burden to request that Zier questions be asked. He never did that. So I'm going to ask you, if there were Zier questions and they were not withdrawn, where do you stand now as to this case? Then under Glasper, we would be looking at a harmless Zier. Well, actually, we wouldn't be looking at a harmless Zier because this issue was not included in the defendant's post-trial motion. So, actually, the issue has been forfeited one way or the other. And otherwise, we would be looking under Glasper at a harmless error analysis, whether the evidence is so strong, which it clearly is, that the error is harmless. I would point out that defense counsel did not make a harmless error or a plain error argument on review. So those analyses have been waived as well. Even if they hadn't been waived, the evidence in this case is absolutely overwhelming. You've got the defendant's confession, which matches the forensic evidence. You've got three eyewitnesses, one of whom is the woman who was in the car with the victim when he was shot. She's known the defendant since they were in fifth grade together. They went all through school. So there's no question she knew who the man was. He called her by her nickname Peaches. So the evidence in this case is absolutely unimpeachable, frankly, with or without the defendant's confession. What about counsel's argument about the person that was not allowed to testify? When you look at that issue, you know, I point out to the court, this defendant had three attorneys, three attorneys, because I think it was a capital issue. But he challenged two of them, didn't he? Well, it was a pretty watered-down challenge, which was dismissed, of course. But under Strickland, there's a strong presumption that the decision whether to call a witness is a matter of strategy. And I think that presumption really applies here where you have three attorneys. If you look at the entire case, there was obviously a tremendous amount of work going on in the case. They've considered every angle. I don't know if the attorneys thought, let's say, bed soul until the trial, let's bring her then. But it really, it's not, there's no indication that it's deficient conduct or that it would have made a difference because she wouldn't have been the witness the defendant thinks she would have. If you look at her trial testimony, she really doesn't add much to what the evidence is. She affirmed, ironically, she personally affirmed that the photos that were introduced at the suppression hearing were accurate. And if the court has seen the photos, which, by the way, the state asked that they be taken, not the defendant, they show his injuries, they show his scabs, and she affirmed that they were correct. What could she have done differently at the suppression hearing? As the defendant says, she could have given her opinion, and that's what it would have been, that they were fresh injuries. Well, you know what? Then the state could have called its paramedic to testify that when you see scabbed over wounds, that means they've been there for at least a day. In this case, according to the defendant's own accounting of how things took place, it was two hours after the injuries were inflicted that the attorney saw him. So according to the medical testimony, these injuries couldn't have been scabbed over by then. So her testimony would have been impeached, and it wouldn't have made a difference. The state had four detectives and an assistant state's attorney, all who testified, not briefly, but in length and detail about what occurred with this defendant, and each one of them denied that he was injured in any way, shape, or form. So even if Attorney Betzel had been called. Refresh me. Was there testimony that established, at least by expert opinion, as to the time within which scabbing would occur? It has to be at least a day. Yeah. Was there testimony to that effect? A paramedic testified to that during the trial. All right. Thank you. The other point, two more points I wanted to make. I just wanted to be clear that under the timeline in this case, you know, the question is, the bottom line question here is, was the defendant injured by police as a means of producing his confession? Well, his confession, by his own account, preceded by approximately two hours the beating he supposedly took. So if the confession came before the beating, you can't say that even if it had occurred, which there's no evidence that it did, compel the confession. The other thing is, even if the defendant had prevailed at the suppression hearing, it would not have ultimately made a result because of the strength of the witnesses. You have your three eyewitnesses. You have the line-up identifications. The evidence is absolutely overwhelming. So even without the defendant's confession, the result of the case would have still been the same and the defendant would have been convicted. So for these reasons, we ask that this Court affirm the defendant's convictions and sentence. Thank you. Thank you. I'd like to briefly speak to the nature of the evidence in this case. We have discussed the oral admission, confession allegedly taken from Mr. Griffin. Nobody felt necessary to write anything down, take any notes, get a waiver, do a video, do a tape recording. It's a murder case. I think we should ask the State to up the quality of the evidence that they want to submit to take a man's liberty away. And as to the three eyewitnesses, the Butlers did not see anybody get shot. They only heard shooting. They saw Peter Robinson, an individual in the alley. Neither of them saw Mr. Pargo get shot. It's not an eyewitness. They see post-event activity. One, the older of the Butlers' sisters, said even at the physical lineup, she wasn't 100% sure. More importantly, and the key in this case is Peter Robinson, who did not identify Lester Griffin until the next day, even though she knew him. But put that aside. She did not identify Lester Griffin to Erica Walker, her best friend, who was right there at the flight pool with her as the offender ran off. There is no explanation for that other than, well, there is, and it's found in the testimony of Investigator Colon who talked to Ms. Robinson in 2006 who said, I never identified Lester. I didn't see Lester that day. This is not overwhelming evidence. There's a problem with every aspect of the state's case in this. There's no physical evidence that ties Lester Griffin to this case. The eyewitness testimony, the case is Peter Robinson, and Peter Robinson went impeached and inconsistent. She said Lester Griffin threatened her. She said Lester Griffin called her from a jail cell and demanded, said, I'll give you $10,000 to sign a piece of paper. He denied doing that. She never told a single person about that. And she said, first of all, I did tell a state's attorney two weeks before trial. Stipulation. No state's attorney was ever told that. That's inconsistent. Peter Robinson had holes in her testimony. Peter Robinson told an investigator she did not see the person who shot Mr. Griffin. We asked this court to consider all of the issues we raised in the brief. We asked this court most respectfully to find that Mr. Griffin did not receive a fair trial in this case because he was not allowed to hear a juror panel. Tell him whether he agreed or disagreed with the four essential presumptions found in this hearing. Thank you. Thank you, counsel. We'll get back to you soon.